```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW HAMPSHIRE
```

Osahenrumwen Ojo

  v.             Case No. 12-cv-204-SM
                Opinion No. 2014 DNH 102

Hillsborough County Department of Corrections,
Kristin Balles, David Mercer, Brian Turcotte,
Jason Barbera, Todd Gordon, and Marc Cusson


**O R D E R**


Before the court are the following matters[1]:

- plaintiff Ojo's motion to compel discovery (doc. no. 57), defendants' response to that motion (doc. no. 60), and a status report on that motion filed by defendants (doc. no. 70);

- defendants' motion for a protective order (doc. no. 67), to which plaintiff has not responded;

- Ojo's motion for summary judgment (doc. no. 51), Ojo's supplemental affidavit (doc. no. 61), and defendants' objection to the motion (doc. no. 56);

- defendants' motion for leave to file supplemental affidavits (doc. no. 63), to which plaintiff has not responded; and

- defendants' motion for summary judgment (doc. no. 81), an affidavit filed in support of that motion (doc. no. 83), and Ojo's objection to that motion (doc. no. 84).

---

[1] Also pending at this time is defendants' motion in limine (doc. no. 80), seeking a ruling allowing evidence of Ojo's prior conviction to be admitted at trial.  That motion will be addressed at a later date.

**Discussion**

I. <u>Discovery Motions (Doc. Nos. 57 and 67)</u>

    A. <u>Standard</u>

A party may obtain discovery of nonprivileged information that is reasonably calculated to lead to the discovery of admissible evidence, <u>see</u> Fed. R. Civ. P. 26(b)(1). The party moving to compel discovery bears the burden of showing that the information is relevant. <u>See</u> <u>Caouette v. OfficeMax, Inc.</u>, 352 F. Supp. 2d 134, 136 (D.N.H. 2005). The party asserting a privilege bears the burden of establishing that the privilege is applicable and has not been waived. <u>See</u> <u>Lluberes v. Uncommon Prods., LLC</u>, 663 F.3d 6, 24 (1st Cir. 2011).

    B. <u>Plaintiff's Motion to Compel (Doc. No. 57)</u>

In October 2013, Ojo moved to compel supervisory defendant Cusson's and Gordon's answers to interrogatories and document production requests. <u>See</u> Document No. 57. Ojo did not attach the pertinent discovery requests to his motion. This court, on December 2, 2013 (doc. no. 63), gave the parties an opportunity to resolve the issues relating to those discovery requests without court involvement. The last word that this court received from either party concerning the motion to compel was defense counsel Attorney Curran's February 18, 2014 statement

that the parties had "discussed the topic of outstanding interrogatory and other discovery issues, to be resolved by ongoing agreement." Defs. Supp. to and Notice re: Pending Mot. to Compel Plfs. Disc. Depo. (Doc. No. 79).

This court denies plaintiff's motion to compel, without prejudice. Plaintiff may renew the motion if he files a copy of the relevant discovery requests and/or responses as an exhibit to the motion, and certifies that he has conferred or attempted to confer with Attorney Curran in good faith to resolve the issues without court involvement. See Fed. R. Civ. P. 37(a)(1).

C. Defendants' Motion for Protective Order (Doc. No. 67)

Plaintiff served discovery requests upon defendants seeking information relative to the "National Inmate Survey" conducted by the federal Bureau of Justice Statistics and a federal government contractor, RTI International, pursuant to the Prison Rape Elimination Act of 2003 ("PREA"), Pub. L. No. 108—79, 117 Stat 972, which is administered by the federal government to estimate the incidence of sexual victimization in prisons nationwide. Ojo has alleged in the complaint that he was interviewed for the survey while he was at the Hillsborough County Department of Corrections ("HCDC"). The survey protocols, in conformity with the PREA, require participating inmates to be assured that their

responses will be anonymous, and that everything they say will be treated as private and confidential. See PREA, Pub. L. No. 108-79, § 4(a)(5), 117 Stat 972 ("The Bureau shall ensure the confidentiality of each survey participant.").

Defendants have asserted that they possess only limited information responsive to Ojo's discovery requests. The HCDC produced to Ojo the names and other contact information for the 2011 RTI International HCDC survey team assigned to the HCDC, and a form letter to the HCDC from the Bureau of Justice Statistics, dated October 14, 2011, concerning the survey. Defendants have moved for a protective order as to the remaining information in their possession, namely, a spreadsheet and a list of inmates identified by name, housing unit, and identification number, which the HCDC generated for the survey team's use in inviting inmates to participate in the survey.

Ojo has not responded to defendants' motion for a protective order, and he has not explained how disclosure of the information at issue would lead to the discovery of admissible evidence. The identifying information in the HCDC's possession appears to be shielded by the survey's confidentiality protocols. Therefore, the court grants defendants' motion for a protective order (doc. no. 67). Defendants are not required to produce to plaintiff the

spreadsheet and list of inmates who may have participated in the PREA National Inmate Survey at the HCDC in 2011.

II. Defendants' Motion to File Affidavits (Doc. No. 63)

Defendants have moved to file supplemental affidavits, which have been submitted to the court and are docketed as Document No. 76, in connection with plaintiff's motion for summary judgment. See Doc. No. 63.  Plaintiff has not objected.  The court grants that motion (doc. no. 63).

III. Summary Judgment

   A. Standard

   Under Federal Rule of Civil Procedure 56, a "court
   shall grant summary judgment if the movant shows that
   there is no genuine dispute as to any material fact and
   the movant is entitled to judgment as a matter of law."
   . . . [A] dispute [is] genuine if "a reasonable jury,
   drawing favorable inferences, could resolve it in favor
   of the nonmoving party. . . . Conclusory allegations,
   improbable inferences, and unsupported speculation, are
   insufficient to establish a genuine dispute of fact."

Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (citations omitted).

   B. Plaintiff's Motion for Summary Judgment (Doc. No. 51)

   Plaintiff has moved for summary judgment, relying on his affidavit, attesting that when he was a pretrial detainee, HCDC

5

Officers Balles, Turcotte, Mercer, and Barbera, on separate occasions in June, July, and August 2011, each subjected him to pat-down searches that involved contact with Ojo's genitals that Ojo characterizes as a sexual assault. Ojo's affidavit states that the officer conducting the search on each of those occasions ordered Ojo to face a wall, then patted down Ojo's clothes, and finished the search by grabbing Ojo's genitals and pulling down and/or squeezing his penis and scrotum through his pants.

The four officers have each responded with affidavits averring that they have been trained in proper search techniques, that routine and random pat-down searches are designed to reduce security risks by detecting contraband, and that they did not engage in the conduct Ojo has described. The affidavits of those defendants demonstrate that the claims at issue are contested and that material facts are in dispute. Plaintiff has not shown an entitlement to judgment as a matter of law on his claims. Accordingly, plaintiff's motion for summary judgment (doc. no. 51) is DENIED.

C. Defendants' Motion for Summary Judgment (Doc. No. 81)

Defendants' motion for summary judgment on the federal claims in this case is based on three grounds: (1) Ojo's failure to grieve any of the incidents while he was incarcerated; (2) the

lack of evidence of physical injury; and (3) the brief and isolated nature of each incident.  Defendants have not moved for summary judgment on the state law claims in this case.  The court addresses defendants' arguments as to Ojo's federal claims below.

1.   PLRA Exhaustion

Citing the Prison Litigation Reform Act ("PLRA"), defendants contend that Ojo cannot proceed on any claims under 42 U.S.C. § 1983 because he did not exhaust his remedies through the HCDC grievance system before filing this case.  The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).

Defendants overlook that when Ojo filed suit, he had been released and was not incarcerated.  The plain language of the PLRA indicates that the exhaustion requirement applies to inmate

7

plaintiffs but does not apply to former prisoners or others who are not confined or incarcerated when they file suit. 42 U.S.C. § 1997e(a) & (h); Carpenito v. Westgate, No. 12-cv-96-JL (D.N.H. Oct. 23, 2012) (doc. no. 10) ("all of the United States Circuit Courts of Appeals to consider it have ruled that under the plain language of the statute, the PLRA's exhaustion requirement applies only to plaintiffs who are incarcerated at the time an action is actually commenced" (citations omitted)), report and recommendation adopted, No. 12-cv-96-JL (D.N.H. Nov. 4, 2012). Cf. Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 34-35 (1st Cir. 2002) (inmate transferred to another facility was not excused from exhaustion, distinguishing cases involving suits filed by former prisoners). The PLRA exhaustion requirement is inapplicable to Ojo's case because he was not incarcerated when he filed his complaint.

### 2. Physical Injury

Defendants contend that because Ojo did not suffer any physical injury, the PLRA, 42 U.S.C. § 1997e(e), bars Ojo's claims for mental or emotional harm. Defendants further highlight the lack of expert disclosures relating to mental and emotional harm as grounds for finding that damages cannot be proven in this case.

The Supreme Court has held that the lack of physical injury does not by itself bar a prisoner from asserting an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). The PLRA provision restricting prisoners' claims for mental and emotional harm, relied upon by defendants, states, as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C. § 1997e(e).

The plain language of the relevant statutory provision indicates that the restriction applies to inmates who are confined at the time they filed suit. See 42 U.S.C. § 1997e(e) & (h). Cf. Harris v. Garner, 216 F.3d 970, 981 (11th Cir. 2000) (en banc) (fact that plaintiff was released post-judgment does not render section 1997e(e) inapplicable, as "the only [confinement] status that counts, for purposes of section 1997e(e) is whether the plaintiff was a 'prisoner confined in a jail, prison, or other correctional facility' at the time the federal civil action was 'brought'" (quoting 42 U.S.C.

§ 1997e(e)). As Ojo was not confined when he filed this action, section 1997e(e)'s restriction is inapplicable to his claims.[2]

### 3. Brief and Isolated Nature of Incidents

#### a. Turcotte, Mercer, Barbera, and Balles

The Fourteenth Amendment protects pretrial detainees from a prison official's use of excessive force intended to punish the inmate. See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979))); Graham v. Sheriff of Logan Cnty., 741 F.3d 1118, 1126 (10th Cir. 2013). To establish a Fourteenth Amendment excessive force claim, a plaintiff must show that the use of force was nontrivial, and that the guard used force with the requisite scienter, cf. Wilson v. Seiter, 501 U.S. 294, 300 (1991) (infliction of punishment is "'deliberate act intended to chastise or deter'" (citation omitted)).

The rule regarding nontrivial uses of force is frequently expressed through the maxim that not every push or shove by a

---

[2] Defendants assert, in a footnote, that Ojo cannot rely on the medical records he produced in discovery to prove that he suffered mental and emotional damages, without an expert witness. This court, upon proper motion or objection to proffered evidence, might exclude such evidence, but the potential lack of such evidence does not warrant summary judgment on the underlying claims at this stage of the case.

10

guard against an inmate is actionable as a federal claim. <u>See, e.g.</u>, <u>Hudson</u>, 503 U.S. at 9-10 ("not . . . every malevolent touch by a prison guard gives rise to a federal cause of action," and "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind" (citations and internal quotation marks omitted)). The safety, security, and facility population control rationales that underlie that aphorism, however, do not apply with equal force in the context of gratuitous, offensive contact with an inmate's genitals. <u>See</u> <u>Washington v. Hively</u>, 695 F.3d 641, 643 (7th Cir. 2012). Such contacts may involve only minimal exertions of force and cause no physical injuries, but result in substantial harm to the dignity, emotional well-being, and mental health of an individual. For these reasons, this court has previously cited a Seventh Circuit case for the rule that the "'unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights, whether or not the force exerted by the assailant is significant.'" <u>Ojo v. Hillsborough Cnty. Dep't of Corr.</u>, No. 12-CV-204-SM, 2012 WL 4513944, at *2 (D.N.H. Sept. 25, 2012) (Report and Recommendation (doc. no. 5), slip op. at 5)

(quoting Washington, 695 F.3d at 642), report and recommendation approved, No. 12-CV-204-SM, 2012 WL 4514005 (D.N.H. Oct. 2, 2012) (Order, doc. no. 8). That a guard touched an inmate inappropriately on only one occasion for a brief period of time does not rule out the possibility that the contact was sufficiently nontrivial to state a plausible claim for relief. See, e.g., Rivera v. Drake, 497 F. App'x 635, 636 (7th Cir. 2012) (summary judgment not proper on Eighth Amendment claim based on evidence that guard pressed his thumb into inmate's anus during pat-down search).

Ojo testified in his deposition that Sgt. Balles and Officers Turcotte, Barbera, and Mercer each grabbed Ojo's penis and testicles through his prison-issued "scrubs," and, for several seconds, squeezed or pulled his genitals "hard" or "rough[ly]" just after searching him. Ojo described Sgt. Balles's contact as occurring at the end of a pat-down search in June 2011, in which he and several other inmates were facing a wall at Balles's direction. Ojo testified that Balles ran her hands down over his HCDC uniform pant legs, then grabbed, pulled, and squeezed his testicles and penis "as hard as she could" for several seconds. Doc. No. 81-3 at 11-12, 58. Ojo testified that Officer Turcotte similarly finished a pat-down search of Ojo in late July 2011 by "grabb[ing] my nuts and pull[ing] pretty hard,"

see id. at 20, 23, 58. Ojo testified that after patting down his legs on one occasion in June 2011, Officer Barbera reached up, grabbed, and pulled Ojo's penis and testicles, and that Officer Mercer, conducting a similar search in July 2011, ended the search by pulling on Ojo's genitals in a manner that was rougher and more aggressive than the other officers. See id. at 31, 36-37, 41, 43, 58-59. According to Ojo's testimony, Officer Mercer was smiling when Ojo turned around to look at him right after the incident. See id. at 29.

The incident with Mercer, like the other incidents, did not result in physical injury to Ojo, did not involve the officers saying anything of a sexual nature to Ojo, and was neither preceded nor followed by problems between Ojo and those officers. See id. at 27, 29, 41. Ojo testified that he spoke to supervisory officers to complain about the incidents, but did not seek medical attention at the HCDC after the incidents occurred. See id. at 40 He further testified that he has suffered anxiety, daily flashbacks, post-traumatic stress disorder, suicidal thoughts for which he sought medical treatment, and other mental health problems relating to the incidents. See id. at 15-16.

An affidavit of HCDC Superintendent David Dionne asserts that routine pat-down searches may sometimes involve brief "grazing" contact with an inmate's genitals, and that such

contact would have been more likely in Ojo's case, where it is undisputed that Ojo did not wear underwear under his pants when he was searched. See Doc. No. 81-2. But there is no evidence suggesting that there could have been a safety or security interest justified by the rough or hard squeezing or pulling of Ojo's penis and scrotum after a pat-down search, as described in Ojo's deposition testimony.[3]

Defendants have cited a line of cases from other jurisdictions in which courts confronting evidence of brief and isolated incidents of contacts with an inmate's genitals during pat-down searches have deemed such contacts to be too trivial to be actionable, and defendants have satisfied the court that the cited cases represent the majority view. Cf. De'lonta v. Clarke, No. 7:11-CV-00483, 2013 WL 209489, at *4 n.9 (W.D. Va. Jan. 14, 2013) (noting "emerging division in the judicial treatment of cases in which an inmate alleges a prison guard sexually abused him or her," in which "[o]ne class of cases focuses on the

---

[3] This is not to say, however, that contacts with an inmate's genitals are never justified. There are certainly circumstances where grabbing or tugging on a male inmate's genitals to search for contraband is justified by a safety or security rationale, see, e.g., Cherry v. Frank, 125 F. App'x 63, 66 (7th Cir. 2005) (no Eighth Amendment claim where undisputed evidence showed that manipulation of inmate's genitals was necessary to expose areas where inmate was believed to have hidden contraband).

language in [Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997)] that limits Eighth Amendment claims to sexual abuse that is 'severe or repetitive,' 105 F.3d at 861, and another class focuses more on 'contemporary standards of decency' and the complete lack of penological justification for guard-on-inmate sexual abuse"). No reported case cited by defendants, however, presents precisely the same facts as Ojo's, where no legitimate purpose is alleged to have been served by the offensive contact, the contact is claimed to have resulted in lasting emotional and mental health injuries, and more than one officer is alleged to have pulled and squeezed the inmate's genitals in a remarkably similar manner. The only case cited by defendants from a district court within the First Circuit involves distinguishable facts. See Palermo v. R.I. ACI, No. CIV.A. 10-221 ML, 2010 WL 2731429, at *1, *5 (D.R.I. June 16, 2010) (allegations that defendant continually approached and rubbed against prisoner from behind while making sexual comments failed to state § 1983 claim), report and recommendation adopted, No. CIV.A. 10-221 ML, 2010 WL 2731397 (D.R.I. July 9, 2010).

A reasonable fact-finder crediting Ojo's testimony could conclude from such testimony and infer from evidence indicating the lack of any justification for the contacts described by Ojo, that the officers' manhandling of Ojo's penis and scrotum was

unjustified by any legitimate purpose, and was intended to humiliate Ojo, as a form of punishment proscribed by the Fourteenth Amendment. See, e.g., Rivera, 497 F. App'x at 636; Washington, 695 F.3d at 642 (summary judgment not proper on Fourteenth Amendment claim that guard searching inmate "spent five to seven seconds gratuitously fondling [inmate's] testicles and penis through [inmate's] clothing and then while strip searching him fondled his nude testicles for two or three seconds" contrary to jail policy and without justification); Wood v. Beauvoir, 692 F.3d 1041, 1049 (9th Cir. 2012) (summary judgment not proper on Eighth Amendment claim based on guard's reaching into inmate's gym shorts and stroking inmate's penis for guard's own sexual gratification). Accordingly, defendants have failed to show that they are entitled to judgment as a matter of law on the claims against Turcotte, Balles, Barbera, and Mercer, and their motion for summary judgment is denied.

### b. Supervisory and Municipal Liability

Defendants have moved for summary judgment on Ojo's § 1983 claims of supervisory and municipal liability on the sole basis that those claims are derivative of the claims against Turcotte, Balles, Barbera, and Mercer. As the court denies the motion for summary judgment on the claims against the subordinates and also

declines to comb the record to find other, unasserted bases for granting summary judgment on the claims of municipal and supervisory liability, the motion for summary judgment (doc. no. 81) on the federal supervisory and municipal liability claims is denied.

### Conclusion

The court grants defendants' motion to file supplemental affidavits (doc. no. 63), and defendants' motion for a protective order (doc. no. 67), shielding from discovery the spreadsheet and list of HCDC inmates who may have participated in the 2011 national survey on the incidence of sexual victimization while Ojo was an inmate there.

The court denies defendants' motion for summary judgment (doc. no. 81), and plaintiff's motion for summary judgment (doc. no. 51). The court also denies plaintiff's motion to compel defendant Gordon's and Cusson's responses to discovery requests (doc. no. 57). Plaintiff may refile a motion to compel production of the responses if he certifies to having made a good faith attempt to confer with defendants' counsel to resolve the discovery dispute, and attaches the relevant discovery requests and/or responses as exhibits to the motion.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 7, 2014

cc: Osahenrumwen Ojo, pro se
    John A. Curran, Esq.

SJM:nmd